Lee F. Bantle (LB-7036)
Amos B. Blackman (AB-7624)
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
(212) 228-9666
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

THOMAS STORRIER,

    Plaintiff,

- against -

AMERICAN BROADCASTING COMPANIES, INC.,
ABC, INC., and GERI WANG,

    Defendants.

------------------------------------------------------------------x

_____ Civ. _____
ECF Case

**COMPLAINT
AND JURY DEMAND**

13 CV 5294

JUDGE PAULEY

RECEIVED JUL 30 2013 U.S.D.C. S.D. N.Y. CASHIERS

    Plaintiff Thomas Storrier, by his attorneys, Bantle & Levy LLP, as and for his complaint against Defendants American Broadcasting Companies, Inc., ABC, Inc., and Geri Wang, alleges as follows:

### NATURE OF THE ACTION

1.    This is an action for employment discrimination based on age in violation of the New York City Administrative Code § 8-101 et seq. (the "Human Rights Law" or "NYCHRL").

### JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, as the matter in controversy as a result of the employment discrimination is in excess of $75,000, Plaintiff is a citizen of the State of Connecticut, Defendant American Broadcasting Companies,

Inc., is a citizen of the State of Delaware and the State of New York, Defendant ABC, Inc., is a citizen of the State of New York, and Defendant Geri Wang is a citizen of the State of New Jersey. A substantial part of the acts giving rise to this action were committed within the district of the United States District Court, Southern District of New York, and venue is properly lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff Thomas Storrier is a fifty-eight (58) year old citizen of the United States and the State of Connecticut who currently resides in Wilton, Connecticut.

4. Upon information and belief, defendant ABC, Inc. is a business corporation organized and existing under the laws of the State of New York, with its principal offices at 77 West 66th Street, New York, New York 10023.

5. ABC, Inc. is a person within the meaning of New York City Administrative Code § 8-102(1), and an employer within the meaning of New York City Administrative Code §§ 8-102(5) and 8-107.

6. Upon information and belief, defendant American Broadcasting Companies, Inc. is a business corporation organized and existing under the laws of the State of Delaware, with its principal offices at 77 West 66th Street, New York, New York 10023.

7. Upon information and belief, defendant American Broadcasting Companies, Inc. is a wholly-owned subsidiary of defendant ABC, Inc.

8. American Broadcasting Companies, Inc. is a person within the meaning of New York City Administrative Code § 8-102(1), and an employer within the meaning of New York City Administrative Code §§ 8 102(5) and 8-107.

9. Upon information and belief, defendant Geri Wang is a citizen of the United States and resident of the State of New Jersey.

**STATEMENT OF FACTS**

Mr. Storrier's Stellar Thirty-Three Year Career at ABC

10. Plaintiff Thomas Storrier ("Plaintiff" or "Mr. Storrier") started working for Defendants ABC, Inc. and American Broadcasting Companies, Inc. (collectively, "ABC" or the "Companies") as an Assistant Manager, Sales Proposals in Chicago in 1979.

11. From 1979 to 1989, Mr. Storrier was based in Chicago, where his outstanding performance led to many promotions culminating in him being named Manager, ABC Sports Sales, in 1984 at the age of 29.

12. At the time, he was one of the youngest ABC employees ever to be promoted to such a high position.

13. In 1989, at ABC's request, Mr. Storrier moved to New York to work in sales at ABC's headquarters.

14. Mr. Storrier's strong track record continued in New York, where he received further promotions, outstanding reviews, and commensurate compensation.

15. In 2001, Mr. Storrier was promoted to Vice President by Mike Shaw, who was ABC's President of Sales and Marketing at the time.

16. Mr. Shaw was a tough and demanding boss, who was intolerant of poor performers.

17. From 2001 through 2009, Mr. Storrier continued to succeed at ABC, consistently receiving annual reviews rating him at the highest or second-highest level of ABC executives.

3

18. During this time, Mr. Storrier's performance was compensated by, in addition to his base salary and merit-based bonuses, grants of stock options and Restricted Stock Units ("RSUs"), a valuable form of stock available as compensation only to ABC executives at and above the level of Vice President or at the recommendation of divisional management.

19. In or about November 2009, Mr. Shaw stepped down as ABC's President of Sales and Marketing.

Geri Wang, ABC's New President of Sales and Marketing,
<u>Remakes Her Senior Staff with Younger Employees</u>

20. In or about February 2010, ABC appointed forty-nine (49) year old Geri Wang ("Ms. Wang") as its new President of Sales and Marketing.

21. Mr. Storrier continued to perform at his usual high level after Ms. Wang's promotion.

22. However, shortly after her promotion to President, Ms. Wang began remaking her senior staff by hiring, promoting, and transferring in younger employees, and demoting, terminating, and forcing out older employees.

23. In May 2010, as part of her effort to create a younger sales and marketing team, without justification, Ms. Wang gave Mr. Storrier, who was then 55, an ultimatum: either be demoted to Account Executive, Daytime and Late Night Sales, or be fired from ABC.

24. In his performance review immediately preceding the demotion, Mr. Storrier had been rated "Leading the Way," the highest rating available to an ABC executive, by his supervisor.

25. Mr. Storrier accepted the demotion rather than be fired.

26. Ms. Wang then presented Mr. Storrier with a "mutual separation agreement."

27. Ms. Wang intended to coerce Mr. Storrier into resigning by demoting him and presenting him with the separation agreement.

28. Mr. Storrier refused to resign, rejected the separation agreement, and continued to perform at his usual high level.

29. Around the same time, three of Mr. Storrier's senior sales executive peers, all over 55, were similarly penalized: one was demoted from Senior Vice President to Vice President, one was forced to resign, and one resigned after his annual bonus was slashed.

30. Mr. Storrier was rated "Moving Ahead," the second-highest rating allowed for an ABC executive, in his annual review for 2010.

31. Nonetheless, Ms. Wang slashed Mr. Storrier's bonus for 2010 by nearly 30%, or $43,000, without justification, to its lowest point in over eight years.

32. In 2011, Ms. Wang also demoted another sales executive over 55 from Senior Vice President to Vice President and slashed the bonus of the oldest remaining sales executive, a sixty-nine year old Senior Vice President, leading to his departure from ABC.

33. Mr. Storrier was again rated "Moving Ahead" in his annual review for 2011.

34. Yet, Ms. Wang again slashed Mr. Storrier's bonus for 2011 by nearly 30%, or $32,000, again without justification, to less than half of what it had been in recent years under Mike Shaw.

35. Furthermore, because Ms. Wang had demoted Mr. Storrier to the level of Account Executive, Daytime and Late Night Sales, he was no longer eligible for compensation in RSU's, which effectively cut his compensation by approximately another 30%, or about $175,000 per year.

36. In 2012, Ms. Wang refused to renew the contract of the Vice President whom she had demoted from Senior Vice President two years earlier, who was now over 60.

37. Ms. Wang made no secret of her campaign to create a younger advertising sales team.

38. In pursuit of her agenda, Ms. Wang held a meeting with her senior executives in which she instructed them, "As a group, you are all getting older. We need to hire people of color. We need to get younger."

<u>Defendants Terminate Mr. Storrier</u>

39. In August 2012, Ms. Wang informed Mr. Storrier, who was now the second oldest remaining senior sales executive, that she was cutting his base salary by $28,000, effective January 2013. Ms. Wang claimed that the pay cut was due to Mr. Storrier's demotion more two years earlier.

40. In fact, at the time of his demotion, Ms. Wang had told Mr. Storrier that the demotion would <u>not</u> cause a salary cut. Indeed, Mr. Storrier's job performance following his demotion had warranted a merit-based salary <u>increase</u> the year before.

41. Such reductions in base salary for ABC sales executives were unusual.

42. Shortly thereafter, Mr. Storrier was informed that, additionally, his bonus would be reduced yet again, by $15,000.

43. Mr. Storrier refused to voluntarily resign, as other older executives had in the face of similar treatment, and he continued to perform at a high level, receiving yet another positive annual review, "Right on Track," for 2012.

44. In late January 2013, Mr. Storrier was informed that his position was being "eliminated."

45. Between Ms. Wang's appointment as ABC's President of Sales and Marketing in February 2010 and April 2013, Ms. Wang caused the demotion and/or termination of approximately seven sales executives over the age of 50 and just three sales executives under the age of 50.

46. During the same time period, Ms. Wang brought in and/or promoted just two sales executives over the age of 50, but at least nine sales executives under the age of 50.

47. During this time, on information and belief, Ms. Wang lowered the average age of ABC sales executives by a significant amount, despite the fact that the executives who were on the team in 2010 and not subsequently terminated—almost exclusively the younger employees—increased the average age due simply to aging.

48. As a result of Defendants' discriminatory treatment of Mr. Storrier, Mr. Storrier was denied income and benefits, continuing opportunities for promotion, advancement, recognition, and increased compensation, he would have received had he not been demoted from the position of Vice President.

49. As a result of Defendants' discriminatory treatment of Mr. Storrier, Mr. Storrier was denied income and benefits, continuing opportunities for promotion, advancement, recognition, and increased compensation, he would have received had he not been terminated.

50. As a result of Defendants' discriminatory treatment of Mr. Storrier, Mr. Storrier has further sustained severe mental and emotional harm and distress.

51. Through her involvement described above, defendant Geri Wang aided, abetted, incited, compelled, and coerced acts the discriminatory treatment of Mr. Storrier that denied him income and benefits, continuing opportunities for promotion, advancement, recognition, and increased compensation, and caused him severe mental and emotional harm and distress.

52. The aforesaid acts and conduct by Defendants, their owners, agents and employees, were performed willfully, intentionally, maliciously, and with reckless indifference to Mr. Storrier's protected rights.

Tolling of the Statutes of Limitation

53. Prior to the filing of this Complaint and less than three years after Defendants demoted Mr. Storrier from Vice President to Account Executive, Mr. Storrier and Defendants entered into an agreement tolling for ninety (90) days the statutes of limitation for any and all claims that could be brought by Mr. Storrier, including but not limited to, claims under the New York City Human Rights Law, New York City Administrative Code § 8-101 et seq.

## FIRST CAUSE OF ACTION
*Discrimination by ABC During Plaintiff's Employment*

54. Plaintiff repeats and realleges the allegations in paragraphs 1–53 as if fully set forth herein.

55. As a result of the Companies' aforesaid acts, ABC discriminated against Plaintiff on account of his age in violation of the in the New York City Administrative Code § 8-107 when they demoted him and substantially reduced his compensation.

56. As a result of the Companies' discriminatory and adverse acts, Plaintiff suffered damage, including without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## SECOND CAUSE OF ACTION
*Discrimination by ABC in Plaintiff's Termination*

57. Plaintiff repeats and realleges the allegations in paragraphs 1–56 as if fully set forth herein.

58. As a result of the Companies' aforesaid acts, ABC discriminated against Plaintiff on account of his age in violation of the in the New York City Administrative Code § 8-107 when they terminated his employment.

59. As a result of the Companies' discriminatory and adverse acts, Plaintiff suffered damage, including without limitation, termination, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

### THIRD CAUSE OF ACTION
*Aiding and Abetting Discrimination During Plaintiff's Employment Against Geri Wang*

60. Plaintiff repeats and realleges the allegations in paragraphs 1–59 as if fully set forth herein.

61. As a result of the foresaid acts, defendant Geri Wang aided, abetted, incited, compelled, and coerced the demotion and reduction in compensation of Plaintiff on account of his age, acts forbidden under New York City Administrative Code § 8-101, et seq., in violation of Administrative Code § 8-107(6).

62. As a result of Wang's unlawful acts, Plaintiff suffered damage, including without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

### AS AND FOR A FOURTH CAUSE OF ACTION
*Aiding and Abetting Discrimination in Plaintiff's Termination Against Geri Wang*

63. Plaintiff repeats and realleges the allegations in paragraphs 1–62 as if fully set forth herein.

64. As a result of the foresaid acts, defendant Geri Wang aided, abetted, incited, compelled, and coerced the termination of Plaintiff on account of his age, acts forbidden under New York City Administrative Code § 8-101, et seq., in violation of Administrative Code § 8-107(6).

65. As a result of Wang's unlawful acts, Plaintiff suffered damage, including without limitation, termination, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## JURY DEMAND

66. Plaintiffs hereby demands trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that the Court grant judgment for Plaintiff and that it order and award Plaintiff the following relief against Defendants:

(1) A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by the New York City Administrative Code, § 8-101 et seq.;

(2) Reinstatement to the highest position to which Plaintiff was and would be entitled and/or front pay;

(3) Actual damages in the form of (a) back pay with interest based on Plaintiff's appropriate compensation had he not been wrongfully demoted and terminated; (b) reimbursement for lost bonuses, stock, health benefits, 401K contributions, social security, experience, training opportunities, and other benefits; in an amount to be proved at trial, but believed to exceed $3,000,000;

(4) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount to be proved at trial, but believed to exceed $500,000;

(5) Punitive damages in an amount not less than $3,000,000;

(6) Attorneys' fees, costs and disbursements;

(7) Interest; and

(8) Such additional relief to Plaintiff as the Court deems just and proper.

Dated: July 26, 2013
New York, New York

BANTLE & LEVY LLP

*Lee F. Bantle*

Lee F. Bantle
Amos B. Blackman
817 Broadway
New York, NY 10003
(212) 228-9666